1
2
3
4
5
6
7
8
9
10

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

DAVID MACRIS, et al.,

             Plaintiffs,

   vs.

BANK OF AMERICA, N.A.,

          Defendants.

_____/

CASE NO. CV F 11-1986 LJO SKO

**ORDER ON DEFENDANT'S F.R.Civ.P. 12 MOTION TO DISMISS**
(Doc. 12.)

<u>**INTRODUCTION**</u>

Defendant Bank of America, N.A. ("B of A"), seeks to dismiss as legally barred plaintiffs David Macris and Julia Macris (collectively "plaintiffs'") claims arising out of plaintiffs' unsuccessful attempts to modify their loan for and subsequent foreclosure of plaintiffs' Turlock, California property ("property").  Plaintiffs filed no papers to oppose dismissal of their claims.  This Court considered B of A's F.R.Civ.P. 12(b)(6) motion to dismiss on the record and VACATES the February 8, 2012 hearing, pursuant to Local Rule 230(c), (g).  For the reasons discussed below, this Court DISMISSES this action.

1

1

## BACKGROUND[1]

2

### Plaintiff's Property Loan And Foreclosure

3      On October 23, 2006, plaintiffs obtained a $304,000 loan from Quicken Loans, Inc. to purchase

4  the property, and the loasn was sold to B of A.  On May 5, 2009, plaintiffs received a default notice and

5  on December 9, 2010 applied for loan modification.

6      On May 17, 2011, plaintiffs were informed that their loan modification request was removed

7  from consideration as of April 19, 2011.  Plaintiffs received no denial letter but received a notice for a

8  trustee sale set for May 23, 2011.  In June 2011, plaintiffs filed a Chapter 13 bankruptcy to postpone the

9  foreclosure sale until August 7, 2011.

10     In July 2011, plaintiffs submitted to B of A a further loan modification application with "updated

11  financials."

12     On September 7, 2011, the property was sold to B of A without completed review on a Home

13  Affordable Modification Program ("HAMP") request.

14

### Plaintiffs' Claims

15     On October 27, 2011, plaintiffs filed their complaint in Stanislaus County Superior Court prior

16  to B of A's removal to this Court.  The complaint accuses B of A of "negligent, fraudulent and unlawful

17  conduct concerning a residential mortgage loan transaction with the Plaintiffs and foreclosure of their

18  property."  The complaint alleges that plaintiffs "relied heavily" on a promised HAMP loan modification

19  and lost their home through non-judicial foreclosure.  The complaint alleges California-based claims

20  which will be addressed in greater detail below.

21

## DISCUSSION

22

### F.R.Civ.P. 12(b)(6) Motion To Dismiss Standards

23     B of A seeks to dismiss the complaint as "an undecipherable hodgepodge of confusing and

24  baseless claims" and "mere legal conclusions."

25     "When a federal court reviews the sufficiency of a complaint, before the reception of any

26  evidence either by affidavit or admissions, its task is necessarily a limited one.  The issue is not whether

27

28      [1]      The factual recitation is derived generally from plaintiffs' Complaint ("complaint"), the target of B of A's
challenges.

a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheurer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683 (1974); *Gilligan v. Jamco Development Corp.*, 108 F.3d 246, 249 (9th Cir. 1997).  A F.R.Civ.P. 12(b)(6) dismissal is proper where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balisteri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990); *Graehling v. Village of Lombard, Ill.*, 58 F.3d 295, 297 (7th Cir. 1995).  A F.R.Civ.P. 12(b)(6) motion "tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).

In addressing dismissal, a court must:  (1) construe the complaint in the light most favorable to the plaintiff; (2) accept all well-pleaded factual allegations as true; and (3) determine whether plaintiff can prove any set of facts to support a claim that would merit relief. *Cahill v. Liberty Mut. Ins. Co.,* 80 F.3d 336, 337-338 (9th Cir. 1996).  Nonetheless, a court is not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Sciences Securities Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (citation omitted).  A court "need not assume the truth of legal conclusions cast in the form of factual allegations," *U.S. ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643, n. 2 (9th Cir.1986), and must  not "assume that the [plaintiff] can prove facts that it has not alleged or that the defendants have violated . . . laws in ways that have not been alleged." *Associated General Contractors of California, Inc. v. California State Council of Carpenters*, 459 U.S. 519, 526, 103 S.Ct. 897 (1983).  A court need not permit an attempt to amend if "it is clear that the complaint could not be saved by an amendment."  *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005).

A "plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554,127 S. Ct. 1955, 1964-65 (2007) (internal citations omitted).  Moreover, a court "will dismiss any claim that, even when construed in the light most favorable to plaintiff, fails to plead sufficiently all required elements of a cause of action." *Student Loan Marketing Ass'n v. Hanes*, 181 F.R.D. 629, 634 (S.D. Cal. 1998).  In practice, a complaint "must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Twombly*, 550 U.S. at 562, 127 S.Ct. at 1969 (quoting *Car Carriers, Inc. v.*

3

1  *Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)).

2      In *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937,1949 (2009), the U.S. Supreme Court

3  explained:

4           . . . a complaint must contain sufficient factual matter, accepted as true, to "state
         a claim to relief that is plausible on its face." . . . A claim has facial plausibility when the
5        plaintiff pleads factual content that allows the court to draw the reasonable inference that
         the defendant is liable for the misconduct alleged. . . . The plausibility standard is not
6        akin to a "probability requirement," but it asks for more than a sheer possibility that a
         defendant has acted unlawfully.  (Citations omitted.)

7

8      After discussing *Iqbal*, the Ninth Circuit Court of Appeals summarized: "In sum, for a complaint

9  to survive [dismissal], the non-conclusory 'factual content,' and reasonable inferences from that content,

10 must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Service*, 572

11 F.3d 962, 989 (9th Cir. 2009) (quoting *Iqbal*, 556 U.S. 662, 129 S.Ct. at 1949).

12     The U.S. Supreme Court applies a "two-prong approach" to address dismissal:

13          First, the tenet that a court must accept as true all of the allegations contained in
         a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of
14       a cause of action, supported by mere conclusory statements, do not suffice. . . .  Second,
         only a complaint that states a plausible claim for relief survives a motion to dismiss. . .
15       . Determining whether a complaint states a plausible claim for relief will . . . be a
         context-specific task that requires the reviewing court to draw on its judicial experience
16       and common sense. . . . But where the well-pleaded facts do not permit the court to infer
         more than the mere possibility of misconduct, the complaint has alleged – but it has not
17       "show[n]"-"that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).

18          In keeping with these principles a court considering a motion to dismiss can
         choose to begin by identifying pleadings that, because they are no more than conclusions,
19       are not entitled to the assumption of truth. While legal conclusions can provide the
         framework of a complaint, they must be supported by factual allegations. When there are
20       well-pleaded factual allegations, a court should assume their veracity and then determine
         whether they plausibly give rise to an entitlement to relief.

21

22 *Iqbal*, 556 U.S. 662, 129 S.Ct. at 1949-1950.

23     Moreover, "a complaint may be dismissed under Rule 12(b)(6) when its own allegations indicate

24 the existence of an affirmative defense." *Quiller v. Barclays American/Credit, Inc.*, 727 F.2d 1067, 1069

25 (11th Cir. 1984).  For instance, a limitations defense may be raised by a F.R.Civ.P. 12(b)(6) motion to

26 dismiss. *Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980); *see Avco Corp. v. Precision*

27 *Air Parts, Inc.*, 676 F.2d 494, 495 (11th Cir. 1982), *cert. denied*, 459 U.S. 1037, 103 S.Ct. 450 (1982).

28 A F.R.Civ.P. 12(b)(6) motion to dismiss may raise the limitations defense when the statute's running

4

is apparent on the complaint's face. *Jablon*, 614 F.2d at 682.  If the limitations defense does not appear

on the complaint's face and the trial court accepts matters outside the pleadings' scope, the defense may

be raised by a motion to dismiss accompanied by affidavits. *Jablon*, 614 F.2d at 682; *Rauch v. Day and*

*Night Mfg. Corp.*, 576 F.2d 697 (6th Cir. 1978).

       With these standards in mind, this Court turns to B of A's challenges to the complaint's claims.

## Failure To Tender

       B of A raises plaintiffs' failure to tender amounts owed on their loan as a global defense to the

complaint's claims seeking to rescind the foreclosure sale.[2]

       "A tender is an offer of performance made with the intent to extinguish the obligation." *Arnolds*

*Management Corp. v. Eischen*, 158 Cal.App.3d 575, 580, 205 Cal.Rptr. 15 (1984) (citing Cal. Civ.

Code, § 1485; *Still v. Plaza Marina Commercial Corp.*, 21 Cal.App.3d 378, 385, 98 Cal.Rptr. 414

(1971)).  "A tender must be one of full performance . . . and must be unconditional to be valid." *Arnolds*

*Management*, 158 Cal.App.3d at 580, 205 Cal.Rptr. 15.  "Nothing short of the full amount due the

creditor is sufficient to constitute a valid tender, and the debtor must at his peril offer the full amount."

*Rauer's Law etc. Co. v. S. Proctor Co.*, 40 Cal.App. 524, 525, 181 P. 71 (1919).

       A defaulted borrower is "required to allege tender of the amount of [the lender's] secured

indebtedness in order to maintain any cause of action for irregularity in the sale procedure." *Abdallah*

*v. United Savings Bank*, 43 Cal.App.4th 1101, 1109, 51 Cal.Rptr.2d 286 (1996), *cert. denied*, 519 U.S.

1081, 117 S.Ct. 746 (1997).  In *FPCI RE-HAB 01 v. E & G Investments, Ltd.*, 207 Cal.App.3d 1018,

1021, 255 Cal.Rptr. 157 (1989), the California Court of Appeal explained:

> . . . generally "an action to set aside a trustee's sale for irregularities in sale notice or
> procedure should be accompanied by an offer to pay the full amount of the debt for
> which the property was security." . . . . This rule . . . is based upon the equitable maxim
> that a court of equity will not order a useless act performed. . . . "A valid and viable
> tender of payment of the indebtedness owing is essential to an action to cancel a voidable
> sale under a deed of trust." . . . The rationale behind the rule is that if plaintiffs could not
> have redeemed the property had the sale procedures been proper, any irregularities in the
> sale did not result in damages to the plaintiffs.  (Citations omitted.)

       An action to set aside a foreclosure sale, unaccompanied by an offer to redeem, does not state

---

       [2]       B of A identifies such claims as the complaint's (first) declaratory relief, (fourth) unjust enrichment, (sixth)
quiet title, and (seventh) wrongful foreclosure claims.

a cause of action which a court of equity recognizes. *Karlsen v. American Sav. & Loan Assn.*, 15 Cal.App.3d 112, 117, 92 Cal.Rptr. 851 (1971). The basic rule is that an offer of performance is of no effect if the person making it is not able to perform. *Karlsen*, 15 Cal.App.3d at118, 92 Cal.Rptr. 851 (citing Cal. Civ. Code, § 1495). Simply put, if the offeror "is without the money necessary to make the offer good and knows it" the tender is without legal force or effect. *Karlsen*, 15 Cal.App.3d at118, 92 Cal.Rptr. 851 (citing several cases). "It would be futile to set aside a foreclosure sale on the technical ground that notice was improper, if the party making the challenge did not first make full tender and thereby establish his ability to purchase the property." *United States Cold Storage v. Great Western Savings & Loan Assn.,* 165 Cal.App.3d 1214, 1224, 212 Cal.Rptr. 232 (1985). "A cause of action 'implicitly integrated' with the irregular sale fails unless the trustor can allege and establish a valid tender." *Arnolds Management*, 158 Cal.App.3d at 579, 205 Cal.Rptr. 15.

"It is settled in California that a mortgagor cannot quiet his title against the mortgagee without paying the debt secured." *Shimpones v. Stickney*, 219 Cal. 637, 649, 28 P.2d 673 (1934); *see Mix v. Sodd*, 126 Cal.App.3d 386, 390, 178 Cal.Rptr. 736 (1981) ("a mortgagor in possession may not maintain an action to quiet title, even though the debt is unenforceable"); *Aguilar v. Bocci*, 39 Cal.App.3d 475, 477, 114 Cal.Rptr. 91 (1974) (trustor is unable to quiet title "without discharging his debt"). "A party may not without payment of the debt, enjoin a sale by a trustee under a power conferred by a deed of trust, or have his title quieted against the purchaser at such a sale, even though the statute of limitations has run against the indebtedness." *Sipe v. McKenna*, 88 Cal.App.2d 1001, 1006, 200 P.2d 61 (1948).

Moreover, to obtain "rescission or cancellation, the rule is that the complainant is required to do equity, as a condition to his obtaining relief, by restoring to the defendant everything of value which the plaintiff has received in the transaction. . . . The rule applies although the plaintiff was induced to enter into the contract by the fraudulent representations of the defendant." *Fleming v. Kagan*, 189 Cal.App.2d 791, 796, 11 Cal.Rptr. 737 (1961). "A valid and viable tender of payment of the indebtedness owing is essential to an action to cancel a voidable sale under a deed of trust." *Karlsen,* 15 Cal.App.3d at 117, 92 Cal.Rptr. 851. Analyzing "trust deed nonjudicial foreclosure sales issues in the context of common law contract principles" is "unhelpful" given "the comprehensive statutory scheme regulating nonjudicial foreclosure sales." *Residential Capital v. Cal-Western Reconveyance Corp.*, 108 Cal.App.4th 807, 820,

821, 134 Cal.Rptr.2d 162 (2003).

"The rules which govern tenders are strict and are strictly applied." *Nguyen v. Calhoun*, 105 Cal.App.4th 428, 439, 129 Cal.Rptr.2d 436 (2003). "The tenderer must do and offer everything that is necessary on his part to complete the transaction, and must fairly make known his purpose without ambiguity, and the act of tender must be such that it needs only acceptance by the one to whom it is made to complete the transaction." *Gaffney v. Downey Savings & Loan Assn.,* 200 Cal.App.3d 1154, 1165, 246 Cal.Rptr. 421 (1988). The debtor bears "responsibility to make an unambiguous tender of the entire amount due or else suffer the consequence that the tender is of no effect." *Gaffney*, 200 Cal.App.3d at 1165, 246 Cal.Rptr. 421.

Neither the complaint nor record references plaintiffs' tender of indebtedness or meaningful ability to do so. The complaint alleges: "Plaintiffs have satisfied any implied requirement at equity to tender any unpaid amounts . . . Plaintiff [sic] is ready, willing and able to work out some sort of agreement with Defendant Bank of America to allow them to make more affordable payments . . ." A mere offer to "work out some sort of agreement" is not a valid tender to support a foreclosure challenge. Silence otherwise as to plaintiffs' tender of or ability to tender amounts outstanding is construed as their concession of inability to do so. Without plaintiffs' meaningful tender, plaintiffs seeks empty remedies, not capable of being granted, to support dismissal of the complaint's claims seeking to rescind the foreclosure sale.

### **HAMP Violations**

B of A challenges as lacking a private cause of action the complaint's claims disguised as an "attempt to assert a claim for violation of HAMP."[3]

The complaint's (second) promissory estoppel claim alleges that plaintiffs "have relied heavily on the HAMP program" offered by B of A. The (third) fraudulent misrepresentation claim notes plaintiffs' reasonable reliance on B of A's representations regarding loan modification. B of A characterizes the (eighth) California fair debt collections claim to allege that B of A's improper refusal to modify plaintiffs' loan caused plaintiffs to appear behind in mortgage payments and related reporting

---

[3]     B of A identifies such claims as the complaint's (second) promissory estoppel, (third) fraudulent misrepresentation and (eighth) California fair debt collections claims.

1   to credit reporting agencies.

2       A fellow district court explains the absence of a private right of action under HAMP:

3           On October 8, 2008, President Bush signed into law the Emergency Economic
        Stabilization Act of 2008, Pub.L. No. 110-343, 122 Stat. 3765 (codified 12 U.S.C. §
4       5201 et seq.) ("EESA"). Section 109 required the Secretary of the Treasury ("the
        Secretary") to take certain measures in order to encourage and facilitate loan
5       modifications. 12 U.S.C. § 5219. However, Section 109 did not create any private right
        of action against servicers for grievances relating to the EESA. *Ramirez v. Litton Loan
6       Serv.*, LP, 2009 WL 1750617, *1 (D. Ariz.2009); *Barrey v. Ocwen Loan Serv., LLC*,
        2009 WL 1940717, * 1 (D. Ariz.2009).

7                   . . .

8

9           Nowhere in the HAMP Guidelines, nor in the EESA, does it expressly provide
        for a private right of action. Rather, Congressional intent expressly indicates that
10      compliance authority was delegated solely to Freddie Mac. By delegating compliance
        authority to one entity, Freddie Mac, Congress intended that a private cause of action was
11      not permitted. *See Reyes-Gaona v. N.C. Growers Ass'n*, 250 F.3d 861, 865 (4th Cir.2001)
        (reiterating that "the doctrine of expressio unis est exclusio alterius instructs that where
12      a law expressly describes a particular situation to which it shall apply, what was omitted
        or excluded was intended to be omitted or excluded.").

13

14  *Marks v. Bank of America, N.A.*, 2010 WL 2572988, at *5, 6 (D. Az. 2010); *see Pantoja v. Countrywide*

15  *Home Loans, Inc.*, 640 F.Supp.2d 1177, 1185 (N.D. Cal. 2009) ("Thus, the Court finds that there is no

16  implied private right to sue fund recipients under TARP," the Troubled Assets Relief Program enacted

17  under EESA and of which HAMP is a part.)

18      B of A is correct that an attempt to recover for alleged HAMP violations fails as a matter of law

19  to deprive plaintiffs of "standing to enforce a private right of action under HAMP.  The complaint's

20  claims premised on HAMP violations or irregularities are barred as a matter of law.

21                          **Declaratory Relief**

22      The complaint's first claim seeks declaratory relief that the "purported power of sale" lacks

23  "force and effect at this time, because Defendants actions in processing, handling and foreclosure of this

24  loan has contained numerous violations of State and federal law."  The declaratory relief claim seeks

25  determination of the property's title "remain in Plaintiffs [sic] name."

26      B of A faults the declaratory relief claim in absence of an "actual case or controversy" given that

27  "the underlying basis for Plaintiffs' claims are without factual or legal support."

28      The complaint lacks a viable declaratory relief claim.  The Declaratory Judgment Act ("DJA"),

8

28 U.S.C. §§ 2201, 2202, provides in pertinent part:

> In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.  Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. §2201(a).

The DJA's operation "is procedural only."  *Aetna Life Ins. Co. of Hartford, Conn. v. Haworth*, 300 U.S. 227, 240, 57 S.Ct. 461, 463 (1937).  "A declaratory judgment is not a theory of recovery." *Commercial Union Ins. Co. v. Walbrook Ins. Co., Ltd.*, 41 F.3d 764, 775 (1st Cir. 1994).  The DJA "merely offers an *additional remedy* to litigants."  *Nat'l Union Fire Ins. Co. v. Karp*, 108 F.3d 17, 21 (2nd Cir. 1997) (italics in original).  A DJA action requires a district court to "inquire whether there is a case of actual controversy within its jurisdiction."  *American States Ins. Co. v. Kearns*, 15 F.3d 142, 143 (9th Cir. 1994).

Declaratory relief is appropriate "(1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding."  *Bilbrey by Bilbrey v. Brown*, 738 F.2d 1462, 1470 (9th Cir.1984).

As to a controversy to invoke declaratory relief, the question is whether there is a "substantial controversy, between parties having adverse legal rights, or sufficient immediacy and reality to warrant the issuance of a declaratory judgment."  *Maryland Cas. Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273, 61 S.Ct. 510, 512 (1941).  The U.S. Supreme Court has further explained:

> A justiciable controversy is thus distinguished from a difference or dispute of a hypothetical or abstract character; from one that is academic or moot. . . . The controversy must be definite and concrete, touching the legal relations of parties having adverse legal interests. . . . It must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.

*Haworth*, 300 U.S. at 240-241, 57 S.Ct. at 464 (citations omitted).

The failure of the complaint's claims as discussed herein demonstrates the absence of an actual controversy subject to declaratory relief.  A declaratory relief action "brings to the present a litigable controversy, which otherwise might only be tried in the future."  *Societe de Conditionnement v. Hunter*

*Eng. Co., Inc.*, 655 F.2d 938, 943 (9ᵗʰ Cir. 1981).  Morever, nothing in California's comprehensive statutory non-judicial foreclosure scheme permits the declaratory relief which the complaint seeks.  *See Gomes v. Countrywide Home Loans, Inc.*, 192 Cal.App.4th 1149, 1154, 121 Cal.Rptr.3d 819 (2011). In the absence of a viable claim and an actual controversy, the complaint fails to support declaratory relief to warrant dismissal of the complaint's first claim.

**Promissory Estoppel**

The complaint's (second) promissory estoppel claim alleges that plaintiffs "have relied heavily on the HAMP program" which B of A offered and "were confident that their home was safe from foreclosure."  The claim further alleges that B of A, without attempting to modify plaintiffs' loan, proceeded with the trustee sale although B of A had promised a 60-day postponement to accommodate their loan modification process.

B of A faults the complaint's lack of sufficient facts to support promissory estoppel elements.

"In California, under the doctrine of promissory estoppel, [a] promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise." *Toscano v. Greene Music*, 124 Cal.App.4th 685, 692, 21 Cal.Rptr.3d 732 (2004) (citation and internal quotations omitted).

"The elements of promissory estoppel are (1) a clear promise, (2) reliance, (3) substantial detriment, and (4) damages 'measured by the extent of the obligation assumed and not performed.'" *Toscano v. Greene Music*, 124 Cal.App.4th 685, 692, 21 Cal.Rptr.3d 732 (2004) (quoting1 Witkin, *Summary of Cal. Law* (9th ed. 1987) Contracts, §§ 249–250, p. 251).[4] "Promissory estoppel is a doctrine which employs equitable principles to satisfy the requirement that consideration must be given in exchange for the promise sought to be enforced." *Kajima/Ray Wilson v. Los Angeles County Metropolitan Transportation Authority,* 23 Cal.4th 305, 310, 96 Cal.Rptr.2d 747 (2000) (citation and internal quotations omitted).

---

[4]     Another California court explained that the elements of promissory estoppel are "(1) a promise clear and unambiguous in its terms; (2) reliance by the party to whom the promise is made; (3)[the] reliance must be both reasonable and foreseeable; and (4) the party asserting the estoppel must be injured by his reliance." *Laks v. Coast Federal Savings & Loan Assn.,* 60 Cal.App.3d 885, 890, 131 Cal.Rptr. 836 (1976).

B of A faults the complaint's absence of allegations that B of A made a clear promise to modify plaintiffs' loan, approved a loan modification, and specified necessary modified terms, such as, a new interest rate, monthly payment amount, and loan term.  B of A challenges the lack of allegations that B of A guaranteed a HAMP modification or how plaintiffs would have acted differently with a loan modification.

B of A argues that plaintiffs' belief that they would receive a loan modification fails to qualify as detrimental reliance on a B of A promise.  *See Kruse v. Bank of America,* 202 Cal.App.3d 38, 55, 248 Cal.Rptr. 217 (1988) ("hopeful expectations cannot be equated with the necessary justifiable reliance"). B of A criticizes allegations of continued payments under a trial payment plan, rather than taking legal action, as insufficient to substantiate detrimental reliance in that continued payments were necessary for HAMP modification.  B of A notes that discontinued payments would have resulted in denial of HAMP modification and property foreclosure.

B of A further attacks the lack of damages allegations in that plaintiffs could have been damaged only if legally entitled to loan modification but did not receive it.  B of A notes no law requiring a loan modification.

B of A's points are valid.  The complaint lacks facts to support detrimental reliance.  In short, there is no clear promise of loan modification on which plaintiffs detrimentally relied to induce damage to plaintiffs.  The complaint merely reflects plaintiffs' attempt to seek a loan modification and B of A's enforcement of foreclosure rights.  As such, the promissory estoppel claim fails.

## **Fraudulent Misrepresentation**

The complaint's (third) fraudulent misrepresentation claim alleges that B of A "concealed material information from Plaintiffs which is required by federal and state statutes and regulations to be disclosed to the Plaintiffs both before and after closing." The claim further alleges that plaintiffs reasonably relied on B of A representations regarding loan modification.

### *Limitations Period*

B of A challenges the complaint's fraud claims as barred by the three-year limitations period of California Code of Civil Procedure section 338(d) ("action for relief on the ground of fraud") in that plaintiffs closed their loan on October 23, 2006 and delayed until October 27, 2011 to file their

1  complaint.

2        B of A is correct that the complaint's fraud claims are susceptible to the limitations defense.

3        B of A faults the complaint's attempt to invoke delayed discovery of alleged fraud.   The

4  complaint alleges: "Plaintiffs first learned of the actions of Defendants, including their failure to disclose

5  and the fraud committed upon him [sic] in September 7, 2011."

6        Under the discovery rule, "the limitations period does not accrue until the aggrieved party has

7  notice of the facts constituting the injury." *E-Fab, Inc. v. Accountants, Inc. Services*, 153 Cal.App.4th

8  1308, 1318, 64 Cal.Rptr.3d 9 (2007).  To rely on delayed discovery of a claim and survive dismissal, "[a]

9  plaintiff whose complaint shows on its face that his claim would be barred without the benefit of the

10 discovery rule must specifically plead facts to show (1) the time and manner of discovery and (2) the

11 inability to have made earlier discovery despite reasonable diligence." *Fox v. Ethicon Endo-Surgery,*

12 *Inc.*, 35 Cal.4th 797, 808, 27 Cal.Rptr.3d 661 (2005) (quoting *McKelvey v. Boeing North American, Inc.,*

13 74 Cal.App.4th 151, 160, 86 Cal.Rptr.2d 645 (1999)).

14       To satisfy the time and manner of discovery requirement, a plaintiff must allege "facts showing

15 the time and surrounding circumstances of the discovery of the cause of action upon which they rely."

16 *Bennett v. Hibernia Bank*, 47 Cal.2d 540, 563, 305 P.2d 20 (1956).  "The purpose of this requirement

17 is to afford the court a means of determining whether or not the discovery of the asserted invasion was

18 made within the time alleged, that is, whether plaintiffs actually learned something they did not know

19 before." *Bennett*, 47 Cal.2d at 563, 305 P.2d 20.

20       Moreover, "to adequately allege facts supporting a theory of delayed discovery, the plaintiff must

21 plead that, despite diligent investigation of the circumstances of the injury, he or she could not have

22 reasonably discovered facts supporting the cause of action within the applicable statute of limitations

23 period." *Fox*, 35 Cal.4th at 809, 27 Cal.Rptr.2d 661.  The doctrine of delayed discovery requires a

24 plaintiff to plead facts showing an excuse for late discovery of the facts underlying his cause of action.

25 *Prudential Home Mortgage Co. v. Superior Court*, 66 Cal.App.4th 1236, 1247, 78 Cal.Rptr.2d 566

26 (1998).  The plaintiff  must show that it was not at fault for failing to discover or had no actual or

27 presumptive knowledge of facts sufficient to put it on inquiry.  *Prudential Home*, 66 Cal.App.4th at

28 1247, 78 Cal.Rptr.2d 566.  As to sufficiency of delayed discovery allegations, a plaintiff bears the burden

to "show diligence" and "conclusory allegations" will not withstand dismissal.  *Fox*, 35 Cal.4th 797, 808, 27 Cal.Rptr.2d 661.

The complaint lacks necessary facts to support delayed discovery.  B of A correctly notes the absence of facts "to specify the time and manner of discovery of the alleged fraud" and what plaintiffs "learned that they did not know before."  The complaint references a mere conclusion that plaintiffs learned of failure to disclose and fraud on September 7, 2011.  The complaint offers nothing to demonstrate that despite the plaintiffs' due diligence, they were unable to obtain information to support purported fraud.  The complaint is silent as to their purported due diligence.  The complaint's fraudulent misrepresentation claim is time barred and subject to dismissal.

### *Fraud Elements*

B of A further attacks the fraudulent misrepresentation claim as lacking sufficient particularity to satisfy F.R.Civ.P. 9(b).

The elements of a California fraud claim are: (1) misrepresentation (false representation, concealment or nondisclosure); (2) knowledge of the falsity (or "scienter"); (3) intent to defraud, i.e., to induce reliance; (4) justifiable reliance; and (5) resulting damage.  *Lazar v. Superior Court*, 12 Cal.4th 631, 638, 49 Cal.Rptr.2d 377 (1996).  The same elements comprise a cause of action for negligent misrepresentation, except there is no requirement of intent to induce reliance.  *Caldo v. Owens-Illinois, Inc.*, 125 Cal.App.4th 513, 519, 23 Cal.Rtpr.3d 1 (2004).

"[T]o establish a cause of action for fraud a plaintiff must plead and prove in full, factually and specifically, all of the elements of the cause of action."  *Conrad v. Bank of America*, 45 Cal.App.4th 133, 156, 53 Cal.Rptr.2d 336 (1996).  There must be a showing "that the defendant thereby intended to induce the plaintiff to act to his detriment in reliance upon the false representation" and "that the plaintiff actually and justifiably relied upon the defendant's misrepresentation in acting to his detriment."  *Conrad*, 45 Cal.App.4th at 157, 53 Cal.Rptr.2d 336.  "The absence of any one of these required elements will preclude recovery."  *Wilhelm v. Pray, Price, Williams & Russell*, 186 Cal.App.3d 1324, 1332, 231 Cal.Rptr. 355 (1986).

/ / /

/ / /

### *Particularity Pleading Standard*

F.R.Civ.P. 9(b) requires a party to "state with particularity the circumstances constituting fraud."[5] In the Ninth Circuit, "claims for fraud and negligent misrepresentation must meet Rule 9(b)'s particularity requirements." *Neilson v. Union Bank of California, N.A.*, 290 F.Supp.2d 1101, 1141 (C.D. Cal. 2003). A court may dismiss a claim grounded in fraud when its allegations fail to satisfy F.R.Civ.P. 9(b)'s heightened pleading requirements. *Vess*, 317 F.3d at 1107.[6] A motion to dismiss a claim "grounded in fraud" under F.R.Civ.P. 9(b) for failure to plead with particularity is the "functional equivalent" of a F.R.Civ.P. 12(b)(6) motion to dismiss for failure to state a claim. *Vess*, 317 F.3d at 1107. As a counter-balance, F.R.Civ.P. 8(a)(2) requires from a pleading "a short and plain statement of the claim showing that the pleader is entitled to relief."

F.R.Civ.P. 9(b)'s heightened pleading standard "is not an invitation to disregard Rule 8's requirement of simplicity, directness, and clarity" and "has among its purposes the avoidance of unnecessary discovery." *McHenry v. Renne*, 84 F.3d 1172, 1178 (9th Cir. 1996). F.R.Civ.P 9(b) requires "specific" allegations of fraud "to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985). "A pleading is sufficient under Rule 9(b) if it identifies the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations." *Neubronner v. Milken*, 6 F.3d 666, 671-672 (9th Cir. 1993) (internal quotations omitted; citing *Gottreich v. San Francisco Investment Corp.*, 552 F.2d 866, 866 (9th Cir. 1997)). The Ninth Circuit has explained:

> Rule 9(b) requires particularized allegations of the circumstances *constituting* fraud. The time, place and content of an alleged misrepresentation may identify the statement or the omission complained of, but these circumstances do not "constitute" fraud. The statement in question must be false to be fraudulent. Accordingly, our cases have

---

[5]    F.R.Civ.P. 9(b)'s particularity requirement applies to state law causes of action: "[W]hile a federal court will examine state law to determine whether the elements of fraud have been pled sufficiently to state a cause of action, the Rule 9(b) requirement that the *circumstances* of the fraud must be stated with particularity is a federally imposed rule." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir. 2003) (quoting *Hayduk v. Lanna*, 775 F.2d 441, 443 (1st Cir. 1995)(italics in original)).

[6]    "In some cases, the plaintiff may allege a unified course of fraudulent conduct and rely entirely on that course of conduct as the basis of a claim. In that event, the claim is said to be 'grounded in fraud' or to 'sound in fraud,' and the pleading of that claim as a whole must satisfy the particularity requirement of Rule 9(b)." *Vess*, 317 F.3d at 1103-1104.

14

consistently required that circumstances indicating falseness be set forth. . . . [W]e [have] observed that plaintiff must include statements regarding the time, place, and *nature* of the alleged fraudulent activities, and that "mere conclusory allegations of fraud are insufficient." . . .   The plaintiff must set forth what is false or misleading about a statement, and why it is false.  In other words, the plaintiff must set forth an explanation as to why the statement or omission complained of was false or misleading. . . .

In certain cases, to be sure, the requisite particularity might be supplied with great simplicity.

*In Re Glenfed, Inc. Securities Litigation*, 42 F.3d 1541, 1547-1548 (9th Cir. 1994) (en banc) (italics in original) *superseded by statute on other grounds as stated in Marksman Partners, L.P. v. Chantal Pharm. Corp.*, 927 F.Supp. 1297 (C.D. Cal. 1996); *see Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997) (fraud allegations must be accompanied by "the who, what, when, where, and how" of the misconduct charged); *see Neubronner*, 6 F.3d at 672 ("The complaint must specify facts as the times, dates, places, benefits received and other details of the alleged fraudulent activity.")

In a fraud action against a corporation, a plaintiff must "allege the names of the persons who made the allegedly fraudulent representations, their authority to speak, to whom they spoke, what they said or wrote, and when it was said or written." *Tarmann v. State Farm Mut. Auto. Ins. Co.,* 2 Cal.App.4th 153, 157, 2 Cal.Rptr.2d 861 (1991).

F.R.Civ.P. 9(b) "does not allow a complaint to merely lump multiple defendants together but 'require[s] plaintiffs to differentiate their allegations when suing more than one defendant . . . and inform each defendant separately of the allegations surrounding his alleged participation in the fraud.'" *Swartz v. KPMG LLP*, 476 F.3d 756, 764-765 (9th Cir. 2007) (quoting *Haskin v. R.J. Reynolds Tobacco Co*., 995 F.Supp. 1437, 1439 (M.D. Fla.1998)). In the context of a fraud suit involving multiple defendants, a plaintiff must, at a minimum, "identif[y] the role of [each] defendant[ ] in the alleged fraudulent scheme." *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 541 (9th Cir.1989). "To state a claim of fraudulent conduct, which carries substantial reputational costs, plaintiffs must provide each and every defendant with enough information to enable them 'to know what misrepresentations are attributable to them and what fraudulent conduct they are charged with.'" *Pegasus Holdings v. Veterinary Centers of America, Inc.*, 38 F.Supp.2d 1158, 1163 (C.D. Cal. 1998) (quoting *In re Worlds of Wonder Sec. Litig.*, 694 F.Supp. 1427, 1433 (N.D. Cal.1988)).

B of A points to the complaint's absence of facts to identify specific statements, who make

15

statements, authority to make statements, and when statements were made.  B of A notes the complaint's mere allegation that plaintiffs believed that they would receive loan modification approval but did not.

The complaint's conclusory allegations fail to meet Rule 9(b)'s strict standard.  The complaint lacks precise allegations as to what B of A, through specifically identified and authorized agents or representatives, allegedly promised or represented. The complaint lacks facts to support fraud elements let alone the who, what, when, when and how of alleged misconduct and the heightened federal pleading standard.  The complaint relies on mere notions of an expected loan modification without supporting facts or necessary details.  The complaint's incomplete allegations are insufficient to warrant dismissal of the complaint's claims sounding in fraud.

Moreover, fraud claims addressing alleged failure to provide a loan modification sound in breach of contract rather than fraud.  *See Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1176 (2nd Cir. 1993) (failure to carry out a promise "does not constitute fraud unless, when the promise was made, the defendant secretly intended not to perform or knew that he could not perform").  Purported contract breaches fail to support fraud claims.

### Unjust Enrichment

The complaint's (fourth) unjust enrichment claim alleges that B of A has been "enriched to the receipt of payment from third parties," including the U.S. Treasury Department and Federal Reserve.

B of A faults the unjust enrichment claim in that the complaint reveals B of A's receipt of only monies which plaintiffs were obligated to pay.

The elements of an unjust enrichment claim are the "receipt of a benefit and [the] unjust retention of the benefit at the expense of another."  *Lectrodryer v. SeoulBank,* 77 Cal.App.4th 723, 726, 91 Cal.Rptr.2d 881 (2000).  As a matter of law, "a quasi-contract action for unjust enrichment does not lie where, as here, express binding agreements exist and define the parties' rights." *California Medical Ass'n, Inc. v. Aetna U.S. Healthcare of California, Inc.*, 94 Cal.App.4th 151, 173, 114 Cal.Rptr.2d 109 (2001).

B of A is correct in that B of A received only payments pursuant to plaintiffs' loan documents, which are binding agreements to define the parties' rights.  As such, B of A could not have received a benefit and unjustly retained it at plaintiffs' expense.  Moreover, any alleged payments to B of A from

third parties was not at plaintiffs' expense to further doom the unjust enrichment claim.

## Negligence

The complaint's (fifth) negligence claim alleges that B of A breached a duty to plaintiffs to service their loan by "failing to properly and accurately credit payments made by Plaintiffs toward the loan, preparing and filing false documents, and foreclosing on the Subject Property without having the legal authority and/or proper documentation."

### *Duty Of Care*

B of A faults the complaint's failure to allege facts to impose on it a legal duty to support a negligence claim.

"The elements of a cause of action for negligence are (1) a legal duty to use reasonable care, (2) breach of that duty, and (3) proximate [or legal] cause between the breach and (4) the plaintiff's injury." *Mendoza v. City of Los Angeles*, 66 Cal.App.4th 1333, 1339, 78 Cal.Rptr.2d 525 (1998) (citation omitted). "The existence of a duty of care owed by a defendant to a plaintiff is a prerequisite to establishing a claim for negligence." *Nymark v. Heart Fed. Savings & Loan Assn.*, 231 Cal.App.3d 1089, 1095, 283 Cal.Rptr. 53 (1991). "[A]bsent a duty, the defendant's care, or lack of care, is irrelevant." *Software Design & Application, Ltd. v. Hoefer & Arnett, Inc.*, 49 Cal.App.4th 472, 481, 56 Cal.Rptr.2d 756 (1996). "The existence of a legal duty to use reasonable care in a particular factual situation is a question of law for the court to decide." *Vasquez v. Residential Investments, Inc.,* 118 Cal.App.4th 269, 278, 12 Cal.Rptr.3d 846 (2004) (citation omitted).

"The 'legal duty' of care may be of two general types: (a) the duty of a person to use ordinary care in activities from which harm might reasonably be anticipated [, or] (b) [a]n affirmative duty where the person occupies a particular relationship to others. . . . In the first situation, he is not liable unless he is actively careless; in the second, he may be liable for failure to act affirmatively to prevent harm." *McGettigan v. Bay Area Rapid Transit Dist.*, 57 Cal.App.4th 1011, 1016-1017, 67 Cal.Rptr.2d 516 (1997).

There is no actionable duty between a lender and borrower in that loan transactions are arms-length. A lender "owes no duty of care to the [borrowers] in approving their loan. Liability to a borrower for negligence arises only when the lender 'actively participates' in the financed enterprise

17

'beyond the domain of the usual money lender.'" *Wagner v. Benson*, 101 Cal.App.3d 27, 35, 161 Cal.Rptr. 516 (1980) (citing several cases). "[A]s a general rule, a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money." *Nymark*, 231 Cal.App.3d at 1096, 283 Cal.Rptr. 53; *see Myers v. Guarantee Sav. & Loan Assn.*, 79 Cal.App.3d 307, 312, 144 Cal.Rptr. 616 (1978) (no lender liability when lender did not engage "in any activity outside the scope of the normal activities of a lender of construction monies").

"Public policy does not impose upon the Bank absolute liability for the hardships which may befall the [borrower] it finances." *Wagner*, 101 Cal.App.3d at 34, 161 Cal.Rptr. 516. The success of a borrower's investment "is not a benefit of the loan agreement which the Bank is under a duty to protect." *Wagner*, 101 Cal.App.3d at 34, 161 Cal.Rptr. 516 (lender lacked duty to disclose "any information it may have had"). "It is simply not tortious for a commercial lender to lend money, take collateral, or to foreclose on collateral when a debt is not paid." *Sierra-Bay Fed. Land Bank Assn. v. Superior Court*, 227 Cal.App.3d 318, 334, 277 Cal.Rptr. 753 (1991).

B of A notes that a loan servicer acquires no duty of care when the servicer assumes no legal duty and no special relationship exists. B of A characterizes the complaint to "establish nothing more than a routine lender/borrower relationship." B of A further points to its failure to cause damages given that plaintiffs' default resulted in the property foreclosure.

The complaint insufficiently attempts to allege B of A's cognizable a duty of care let alone its breach. Plaintiffs lack a negligence claim based on a B of A's servicer role which is akin to a lender/borrower relationship, particularly in the absence of a duty to forego foreclosure or to provide loan modification. "No such duty exists . . . to determine the borrower's ability to repay the loan. . . . The lender's efforts to determine the creditworthiness and ability to repay by a borrower are for the lender's protection, not the borrower's." *Renteria v. United States*, 452 F.Supp.2d 910, 922-923 (D. Ariz. 2006) (borrowers "had to rely on their own judgment and risk assessment to determine whether or not to accept the loan"). "A commercial lender is not to be regarded as the guarantor of a borrower's success and is not liable for the hardships which may befall a borrower." *Sierra-Bay Fed. Land Bank Assn. v. Superior Court*, 227 Cal.App.3d 318, 334, 277 Cal.Rptr. 753 (1991). B of A had "no interest in the loan" in its

role as loan servicer.  *See Cleveland v. Deutsche Bank Nat. Trust Co.*, 2009 WL 250017, at *3 (S.D. Cal. 2009).

B of A owed no actionable duty of care to plaintiffs arising from plaintiffs' default, property foreclosure, and attempts to avoid foreclosure.  The complaint lacks facts of special circumstances to impose duties on B of A in that the complaint depicts an arms-length transaction, nothing more.  The complaint fails to substantiate a special lending or other relationship or an actionable breach of duty to substantiate a negligence claim.  The negligence claim fails.

### Quiet Title

The complaint's sixth claim alleges that plaintiffs are "entitled to quiet title against Defendants, clearing title of the purported subject mortgage encumbrance."  The claim seeks a declaration that the property's title is vested in plaintiffs alone and that B of A has no estate, right, title or interest in the property.

B of A challenges a quiet title claim in absence of the complaint's allegation of plaintiffs' tender of amounts owed on their loan.

California Code of Civil Procedure section 760.010 provides for an action "to establish title against adverse claims to real or personal property or any interest therein."  California Code of Civil Procedure section 761.020 mandates a "verified" complaint for a quiet title action to include:

1.     A legal description and street address of the subject real property;

2.     The title of plaintiff as to which determination is sought and the basis of the title;

3.     The adverse claims to the title of the plaintiff against which a determination is sought;

4.     The date as of which the determination is sought; and

5.     A prayer for the determination of the title of the plaintiff against the adverse claims.

The quiet title remedy "is cumulative and not exclusive of any other remedy, form or right of action, or proceeding provided by law for establishing or quieting title to property."  Cal. Code Civ. Proc., § 760.030.

The complaint lacks the property's legal description and facts as to the title of which plaintiffs seek determination and the basis of plaintiffs' purported title given their inability to tender amounts due on their loan.  A quiet title claim requires an allegation that the plaintiffs "are the rightful owners of the

property, i.e., that they have satisfied their obligations under the Deed of Trust." *See Kelley v. Mortgage Electronic Registration Systems, Inc.*, 642 F.Supp.2d 1048, 1057 (N.D. Cal. 2009). The complaint lacks facts that plaintiffs are rightful owners of the property, have satisfied deed of trust obligations and thus lacks a properly pled quiet title claim.

Moreover, a purported quiet title claim is doomed in the absence of a tender of amounts owed. "It is settled in California that a mortgagor cannot quiet his title against the mortgagee without paying the debt secured." *Shimpones v. Stickney*, 219 Cal. 637, 649, 28 P.2d 673 (1934).  "A party may not without payment of the debt, enjoin a sale by a trustee under a power conferred by a deed of trust, or have his title quieted against the purchaser at such a sale, even though the statute of limitations has run against the indebtedness." *Sipe v. McKenna*, 88 Cal.App.2d 1001, 1006, 200 P.2d 61 (1948); *see Mix v. Sodd*, 126 Cal.App.3d 386, 390, 178 Cal.Rptr. 736 (1981) ("a mortgagor in possession may not maintain an action to quiet title, even though the debt is unenforceable"); *Aguilar v. Bocci*, 39 Cal.App.3d 475, 477, 114 Cal.Rptr. 91 (1974) (trustor is unable to quiet title "without discharging his debt.  The cloud upon his title persists until the debt is paid.").

"A valid and viable tender of payment of the indebtedness owing is essential to an action to cancel a voidable sale under a deed of trust." *Karlsen,* 15 Cal.App.3d at 117,  92 Cal.Rptr. 851.  An "action to set aside the sale, unaccompanied by an offer to redeem, would not state a cause of action which a court of equity would recognize." *Copsey v. Sacramento Bank*, 133 Cal. 659, 662, 66 P. 7 (1901).

Plaintiffs are unable to re-acquire good title to the foreclosed property without paying or tendering the outstanding indebtedness.  With the complaint's absence of a meaningful ability or willingness to tender the indebtedness, a purported quiet title claim fails.  This Court is not in a position to award plaintiffs a windfall.

**Wrongful Foreclosure**

The complaint's (seventh) wrongful foreclosure claim alleges that plaintiffs' promissory note "was separated from the Deed of Trust and transferred to the loan pool . . . the Right Title and Interest to the Deed of Trust followed the Note on that date, and any subsequent purported Assignment is a lie . . . . Any beneficiary was divested of interest upon the transfer of the Note under California Law and

1   lacked power to assign any interest."  The claim concludes that "attempt to foreclose on the Subject

2   Property was null and void."

3       B of A challenges the wrongful foreclosure claim's reliance on a "split note" notion.  B of A

4   attributes the claim to allege that plaintiffs' promissory note was securitized with its beneficial interest

5   transferred without a proper assignment to violate a pooling and servicing agreement and as such the

6   promissory note and deed of trust were split to render them unenforceable.  B of A explains that a

7   securitization transaction is distinct from than a loan transaction in that a new contract between the

8   lender and securitizing purchaser is separate from a borrower's obligations to pay under the promissory

9   note.

10      Under California law, a lender may pursue non-judicial foreclosure upon default with a deed of

11  trust with a power of sale clause.  "Financing or refinancing of real property is generally accomplished

12  in California through a deed of trust. The borrower (trustor) executes a promissory note and deed of trust,

13  thereby transferring an interest in the property to the lender (beneficiary) as security for repayment of

14  the loan." *Bartold v. Glendale Federal Bank,* 81 Cal.App.4th 816, 821, 97 Cal.Rptr.2d 226 (2000).  A

15  deed of trust "entitles the lender to reach some asset of the debtor if the note is not paid." *Alliance*

16  *Mortgage Co. v. Rothwell,* 10 Cal.4th 1226, 1235, 44 Cal.Rptr.2d 352 (1995).

17      If a borrower defaults on a loan and the deed of trust contains a power of sale clause, the lender

18  may non-judicially foreclose. *See McDonald v. Smoke Creek Live Stock Co.*, 209 Cal. 231, 236-237,

19  286 P. 693 (1930). The California Court of Appeal has explained non-judicial foreclosure under the

20  applicable California Civil Code sections:

21          The comprehensive statutory framework established to govern nonjudicial
            foreclosure sales is intended to be exhaustive. . . . It includes a myriad of rules relating
22          to notice and right to cure. It would be inconsistent with the comprehensive and
            exhaustive statutory scheme regulating nonjudicial foreclosures to incorporate another
23          unrelated cure provision into statutory nonjudicial foreclosure proceedings.

24  *Moeller v. Lien,* 25 Cal.App.4th 822, 834, 30 Cal.Rptr.2d 777 (1994); *see I.E. Assoc. v. Safeco Title Ins.*

25  *Co.*, 39 Cal.3d 281, 285, 216 Cal.Rptr. 438 (1985) ("These provisions cover every aspect of exercise of

26  the power of sale contained in a deed of trust.")

27      Under California Civil Code section 2924(a)(1), a "trustee, mortgagee or beneficiary or any of

28  their authorized agents" may conduct the foreclosure process.  Under California Civil Code section

21

2924b(4), a "person authorized to record the notice of default or the notice of sale" includes "an agent for the mortgagee or beneficiary, an agent of the named trustee, any person designated in an executed substitution of trustee, or an agent of that substituted trustee." "Upon default by the trustor, the beneficiary may declare a default and proceed with a nonjudicial foreclosure sale." *Moeller*, 25 Cal.App.4th at 830, 30 Cal.Rptr.2d 777.

"A properly conducted nonjudicial foreclosure sale constitutes a final adjudication of the rights of the borrower and lender." *Moeller*, 25 Cal.App.4th at 831, 30 Cal.Rptr.2d 777. "As a general rule, a trustee's sale is complete upon acceptance of the final bid." *Nguyen v. Calhoun*, 105 Cal.App.4th 428, 440-441, 129 Cal.Rptr.2d 436 (2003). "If the trustee's deed recites that all statutory notice requirements and procedures required by law for the conduct of the foreclosure have been satisfied, a rebuttable presumption arises that the sale has been conducted regularly and properly; this presumption is conclusive as to a bona fide purchaser." *Moeller*, 25 Cal.App.4th at 831, 30 Cal.Rptr.2d 777 (citations omitted). "A nonjudicial foreclosure sale is accompanied by a common law presumption that it 'was conducted regularly and fairly.'" *Melendrez v. D & I Investment, Inc.*, 127 Cal.App.4th 1238, 1258, 26 Cal.Rptr.3d 413 (2005) (quoting *Brown v. Busch,* 152 Cal.App.2d 200, 204, 313 P.2d 19 (1957)). "This presumption may only be rebutted by substantial evidence of prejudicial procedural irregularity." *Melendrez*, 127 Cal.App.4th at 1258, 26 Cal.Rptr.3d 413.

To challenge foreclosure, "it is necessary for the complaint to state a case within the code sections for which reason it is essential to allege the facts affecting the validity and invalidity of the instrument which is attacked." *Kroeker v. Hurlbert,* 38 Cal.App.2d 261, 266, 101 P.2d 101 (1940). A "trustee or mortgagee may be liable to the trustor or mortgagor for damages sustained where there has been an illegal, fraudulent or wilfully oppressive sale of property under a power of sale contained in a mortgage or deed of trust." *Munger v. Moore*, 11 Cal.App.3d 1, 7, 89 Cal.Rptr. 323 (1970). As the California Supreme Court explained decades ago:

> It is the general rule that courts have power to vacate a foreclosure sale where there has been fraud in the procurement of the foreclosure decree or where the sale has been improperly, unfairly or unlawfully conducted, or is tainted by fraud, or where there has been such a mistake that to allow it to stand would be inequitable to purchaser and parties. Sham bidding and the restriction of competition are condemned, and inadequacy of price when coupled with other circumstances of fraud may also constitute ground for setting aside the sale.

1    *Bank of America Nat. Trust & Savings Ass'n v. Reidy*, 15 Cal.2d 243, 248, 101 P.2d 77 (1940).

2          Moreover, "[u]nder California law, there is no requirement for the production of an original

3    promissory note prior to initiation of a nonjudicial foreclosure. . . . Therefore, the absence of an original

4    promissory note in a nonjudicial foreclosure does not render a foreclosure invalid." *Pantoja v.*

5    *Countrywide Home Loans, Inc.*, 640 F.Supp.2d 1177, 1186 (N.D. Cal. 2009). "Under Civil Code section

6    2924, no party needs to physically possess the promissory note." *Sicairos v. NDEX West, LLC*, 2009 WL

7    385855, *3 (S.D. Cal. 2009) (citing Cal. Civ. Code, § 2924(a)(1)). Rather, "[t]he foreclosure process

8    is commenced by the recording of a notice of default and election to sell by the trustee." *Moeller*, 25

9    Cal.App.4th at 830, 30 Cal.Rptr.2d 777. An "allegation that the trustee did not have the original note

10   or had not received it is insufficient to render the foreclosure proceeding invalid." *Neal v. Juarez*, 2007

11   WL 2140640, *8 (S.D. Cal. 2007).

12         The complaint lacks facts of a specific statutory irregularity or misconduct in the foreclosure

13   proceedings.  The complaint's apparent attempt to challenge foreclosure validity offers nothing to

14   support a discrepancy in the foreclosure process to warrant dismissal of the complaint's claims,

15   including claims of wrongful foreclosure. The complaint's references to separating the promissory note

16   from the deed of trust are unavailing given the absence of need to produce the original promissory note.

17   The complaint lacks allegations to overcome the presumption of foreclosure sale validity with its failure

18   to articulate a procedural defect.  The wrongful foreclosure claim fails.

19                        **Rosenthal Fair Debt Collection Practices Act**

20         The complaint's eighth claim seeks relief under the Rosenthal Fair Debt Collection Practices Act

21   ("RFDCPA"), Cal. Civ. Code, §§ 1788, et seq.  The claim alleges that B of A "used unfair and

22   unconscionable means to collect a debt not owed" to B of A and that B of A "made false reports to credit

23   reporting agencies about Plaintiffs' credit standing."

24         B of A challenges that it is subject to a RFDCPA claim in that it does not qualify as a debt

25   collector under RFDCPA.

26         The RFDCPA's purpose is "to prohibit debt collectors from engaging in unfair or deceptive

27   practices in the collection of consumer debts and to require debtors to act fairly in entering into and

28   honoring such debts." Cal. Civ. Code, § 1788.1(b).  The RFDCPA defines "debt collector" as "any

                                           23

person who, in the ordinary course of business, regularly, on behalf of himself or herself or others, engages in debt collection."  Cal. Civ. Code, § 1788.2(c).  "[F]oreclosure does not constitute debt collection under the RFDCPA."  *Izenberg v. ETS Services, LLC*, 589 F.Supp.2d 1193, 1199 (C.D. Cal. 2008).  The "law is clear that foreclosing on a property pursuant to a deed of trust is not a debt collection within the meaning of the RFDCPA or the FDCA [Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692, et seq.]."  *Gamboa v. Trustee Corps*, 2009 WL 656285, * 4 (N.D. Cal. 2009).  As this Court has explained previously, "[l]ogic suggests that non-judicial foreclosure is not a debt collector's act under California Civil Code section 1788.2(c)."  *Swanson v. ECM Mortgage Corp.*, 2009 WL 3627925 (E.D. Cal. 2009).

B of A faults the complaint's lack of facts to characterize B of A as a debtor collector under the RFDCPA.  B of A challenges the complaint's failure to identify its specific conduct to violate a specific RFDCPA provision.

B of A is correct that the complaint fails to substantiate it as a debt collectors to subject it to a RFDCPA claim.  The complaint references only loan origination, loan modification attempts, and foreclosure, none of which is debt collector activity under the RFDCPA.  The complaint's failure to identify a specific RFDCPA violation is a fatal flaw.  A purported  RFDCPA claim fails and is subject to dismissal.

### **Attempt At Amendment And Malice**

As discussed above, the complaint's global claims are barred legally, and plaintiffs are unable to cure the complaint's claims by allegation of other facts and thus are not granted an attempt to amend. Moreover, this Court surmises that plaintiffs brought this action in absence of good faith and that plaintiffs seek to exploit the court system to delay or to vex B of A regarding its plans for the property. The test for maliciousness is a subjective one and requires the court to "determine the . . . good faith of the applicant."  *Kinney v. Plymouth Rock Squab Co.*, 236 U.S. 43, 46 (1915); *see Wright v. Newsome*, 795 F.2d 964, 968, n. 1 (11th Cir. 1986); *cf. Glick v. Gutbrod*, 782 F.2d 754, 757 (7th Cir. 1986) (court has inherent power to dismiss case demonstrating "clear pattern of abuse of judicial process").  A lack of good faith or malice also can be inferred from a complaint containing untrue material allegations of fact or false statements made with intent to deceive the court. *See Horsey v. Asher*, 741 F.2d 209, 212

(8th Cir. 1984).  An attempt to vex or delay provides further grounds to dismiss this action.

## CONCLUSION AND ORDER

For the reasons discussed above, this Court:

1.     DISMISSES with prejudice this action against plaintiffs; and

2.     DIRECTS the clerk to enter judgment in favor of defendant Bank of America, N.A., and against plaintiffs David Macris and Julia Macris and to close this action.

IT IS SO ORDERED.

**Dated:   January 27, 2012**           **/s/ Lawrence J. O'Neill**
UNITED STATES DISTRICT JUDGE